Good morning. May it please the Court, my name is Stephan Love, and I'm here on behalf of Plaintiff's Appellants, and I'm reserving five minutes for rebuttal. The jury found the defendants liable for intentional fraud, breach of fiduciary duty, and negligent misrepresentation, but the district court decided as a matter of law the jury could not consider plaintiff's request for lost profits as damages or for punitive damages. That was error, and plaintiffs are entitled to a trial on those issues. I'll start with the lost profits ruling. The ruling was twofold. The district court decided that certain expert testimony on the amount of lost profits was speculative and inadmissible, and the district court also decided the entire issue would be kept from the jury. So it's important when we're analyzing this to keep these two aspects of the ruling distinct. When it comes to the exclusion of the expert testimony, the district court abused its discretion in ruling that this testimony was speculative. There was nothing speculative about it. The expert started from undisputed facts regarding the performance of Arcsoft and its shares and amounts of shares held by different individuals and entities from the time of this buyout right on through its successful IPO. What the district court, I believe, was getting at was that the expert assumed for the purpose of calculation that plaintiffs would have been able to hold their shares, retain them, and sell them after the IPO. And the district court, and I think defendants as well, are under the mistaken view that by forming that assumption, because the expert formed that assumption, plaintiffs had to prove that they would have participated in this exact same IPO. Well, let me ask you about the expert testimony. I'm trying to figure out how, can Mr. Eichmann's $300 million loss profit testimony be considered expert testimony if the assumptions were provided by counsel? It seems like there might be expertise involved in that calculation or that there would be. So help me understand that. And especially, did it account for all the variables that could have arisen? Having trouble seeing that, so I'm going to give you an opportunity. Absolutely. So the assumption of plaintiffs retaining their shares actually comes, it was given to the expert by plaintiff's counsel, but it comes from California law of loss profits. It's widely accepted that when a defendant's own wrongdoing has made it impossible to precisely calculate loss profits, the plaintiff can offer a reasonable approximation. And California case law tells us the defendant's own profits are a reasonable approximation of the plaintiff's loss profits when the wrongdoing excluded the plaintiff from a business opportunity. So that's where that assumption came from. Now, when it comes to the numbers at play and the calculations, the expert brought his expertise to bear by wading through a very lengthy IPO prospectus, restructuring agreement, by calculating capitalization of ArcSoft at different points. And it was math ultimately, but it was the kind of math that's very helpful to a jury to understanding a reasonable approximation of lost profits. But wasn't the buyout predicated on the shareholders being bought out? So Deng, one of the defendants here, did testify that the new investors, Huatai, this major Chinese investment bank, among others, required all old shareholders to be bought out. That was Deng's testimony. Now, Your Honor's question gets to actually the other part of proving lost profits. There's a predicate showing that plaintiffs need to make to be entitled to ask for lost profits at all. That's a finding that there was proximate causation of some lost profits. But that is a jury determination. And it was one that this jury was not permitted to decide. So absolutely, on the one hand, we have Deng's testimony contested that new investors required plaintiffs to be bought out. You say that's contested, but what is it contested with? Well, our posture here is reviewing a district court ruling on a factual issue. So a reasonable juror who makes all inferences in favor of plaintiffs and could also reject all of defendant's evidence, the reasonable jury — Wait, wait, wait, wait, wait. Reading between the lines of that answer, it seems like there is no counter evidence. It's that evidence and then nothing else. Specifically as to what these new investors told Deng? Yes. That's right. We don't have any direct evidence of that because Deng was keeping all plaintiffs unaware of all of its dealings with Huatai. Even if a jury didn't believe Deng's testimony, what are they going to do with that? They're going to — they're going to — they have nothing else to fill the gap. I disagree. The jury here and the question now for this — we're talking now about proximate causation of some lost profits. The amount is a separate question to do with this expert. When it comes to proximate causation of some lost profits, we ask, could a reasonable juror find that plaintiffs could have participated in some profitable IPO reasonably comparable, substantially similar to the IPO that it actually underwent? And again, that jury is — the posture this Court assumes is that that jury is rejecting all of defendants' evidence and making — And then you want the jury to make a judgment call about what could have happened in the future with no evidence. There's not no evidence. There is evidence that this IPO was first conceived of nine months before the buyout. That's when Deng started talking to Huatai, the most significant sponsor of this thing, on one phone, talking to Chan on the other phone, never letting the two be aware of each other. That's when ARKSoft's performance started to turn around. These are pre-buyout events. They indicate ARKSoft had extraordinary potential to undergo a profitable IPO before the buyout even took place. From that evidence, and also from evidence regarding ARKSoft's business — let me just give an example of that. The core of ARKSoft's business financially is cell phone camera processing software. We have dual camera software, single camera software. ARKSoft was coming to dominate this market before the buyout, before plaintiffs were knocked out. Plaintiffs weren't told about that, but that's what ARKSoft was doing. What's your best case on why, in your view, to support your view that the district court abused its discretion in saying that, in preventing this, I guess, ultimately preventing this $300 million amount to come out because, in the district court's view, it might mislead the jury? The first case to cite would be the Elosu case. It's a Ninth Circuit decision from 2022. It's cited in the briefs. And this is a case where this court held a district court abused its discretion in excluding expert testimony as speculative. The reason the district court in that case excluded the testimony was because the district court found fault with the expert's assumptions. This court held that's not a decision for the district court to make. That's a decision for the jury to make. The expert needs to have foundation, but not corroboration, for the assumptions that they make. And that's a quote from Elosu, foundation, not corroboration. This district court made the exact same mistake, and it was an abuse of discretion to exclude this testimony. Can we shift gears a little bit? We have a number of issues to get to, so I want to make sure that we cover a couple of other things. By all means. So on the punitive damages question, it seems to me that that's going to boil down to what the definition of fraud is in this heightened standard for when punitive damages are appropriate. And as I understand California law, we've got a different definition of fraud for purposes of just stating a tort claim, an intentional tort claim. And then for the punitive damages standard, there is a statutory definition for how we think about fraud in terms of punitive damages. You agree with that? Yes. You think that there, I read these two definitions, and it looks like the intent element is slightly different. For just a claim, you have to have intent to defraud. And for punitive damages, you have to have intent to injure. Defrauding is a form of injury, and the case law makes this clear. There isn't some... What California case do you have that specifically addresses these two definitions and says they mean the same thing? There would be the case of Miller. That's a 1976 longstanding court of appeal decision cited in the briefs, which says, quote, proof of the cause of action for fraud is adequate basis for awarding punitive damages. There is no extra intent required. And defendant's briefing does not cite any case saying there's an extra intent required. What we have instead are a number of cases that say the intent to defraud suffices to give you punitive damages. So if that's true, I'm going to go back and... I looked at Miller, but I'll go back and look at it again. If that's true, it begs the question, why did California provide a specific statutory definition for fraud for punitive damages if it just meant the same thing as a fraud action? That specific provision seems to be completely useless if that's the state of California law. I suppose it might be. I'll just say one more case to the court. This would be the Roddenberry case. This is another Cal Court of Appeal decision. I read that case this morning. I think it's completely off point because that case is about the difference, the line between a contract action and a tort action when sort of the theory of fraud is at issue. It doesn't talk at all about this statute that defines fraud for purposes of whether punitive damages are appropriate. But it does say in that case that the plaintiff proved intent to defraud as an element of concealment, and it does say that concealment liability supported the award of punitive damages. I don't think it says that. Well, I would invite Your Honor to reread the case. Can you tell me what page it says that on? I'll go back and look at it. Like I said, I read it this morning, and I think it's an analysis of when something becomes tort liability as opposed to just contract liability. And I mean, it goes in depth about that in California's policy choices. I just don't see an analysis at all. Let me also offer an analogy between the language of the statute, 3294, which is the punitive damages statute, and the instructions here and the case law. The punitive damages statute says fraud means intentional concealment. That would be one component of fraud. And that is describing intent in the sense of volition. This wasn't an accidental concealment. And the second prong would be with the intention of thereby, and again, I'm quoting the statute, depriving a person of property or legal rights or otherwise causing injury. So you have to have an intent behind the act you committed, in this case, concealment. Who are you quoting from? I'm now glossing the statute. You have the intentional concealment. That's from the statute. And then the intention, again, to quote, of depriving a person of property or otherwise causing injury. So there needs to be an intention to cause some kind of harm. Now, the intent to defraud is harm. Defrauding a person is harming them. And the defendants, again, have not pointed out any case saying you need to show something else besides intent, fraud, the form of intent built into intentional fraud. That's not enough. And there is no case that says that. And we have the Miller case, proof of cause of action for fraud is an adequate basis for awarding punitive damages. It couldn't be clearer. This is a state law issue, but the state courts have spoken on it clearly. Now, the other point on this, just so I can get this out before I step back, would be the evidence. Let's assume I'm right on the standard. At that point, the question becomes, could a reasonable jury have found clear and convincing evidence of intentional fraud? Because this was kept from the jury altogether, again, we make all reasonable inferences in favor of plaintiffs. Again, we reject all of defendants' contrary evidence, just as a reasonable juror could. Even if the expert testimony is not allowed? Oh, well, here we're talking about punitive damages. Right. And since the court granted So you wouldn't rely on the expert testimony at all for the  In other areas, but as far as the amount of lost profits goes, that's not a component I just wanted to make sure that I understood your argument. We have the fact that Deng concealed from plaintiffs the involvement of Huatai, this major Chinese investor, which began months before the buyout. And despite the fact Deng is working closely with this company, he's telling Chan, oh, it's just some small investors. There's no institutional investor involved. This is fraudulent concealment. The jury found it was. We have the first half of 2017 quarterly financial statements of ArcSoft. They show better performance than previous statements. Deng shared these with the new investors. He concealed them from plaintiffs. There's more, which is listed in the briefs. The point is a reasonable juror could readily find clear and convincing evidence of intentional fraud based on these facts, and therefore punitive damages should have gone to the jury. I'm going to reserve the balance of my time unless there's a final answer. Even though the jury came back with not finding for intentional misrepresentation? Ah, well, I'll quote the California Supreme Court. California has long viewed fraud as being equally blameworthy, whether accomplished through affirmative misrepresentation or concealment. That's the Radigan v. Uber case just decided last year. There's no difference in culpability for concealment versus misrepresentation. And that's a, frankly, a misstatement, or at least a mistaken insinuation of defendant's briefing. Before you sit down, I have one last question. On the, sorry, I don't have the reference right in front of me. Hold on. The non-statutory exception argument related to California Corporations Code Section 1312, are you wanting us to certify, I'm not clear what the parties want us to do there. Do you want us to certify that issue or no? There's absolutely no need to certify it. The job of this court on that issue is to decide the issue as it imagines the Cal Supreme Court would have. And here we have the California Supreme Court in the Steinberg decision, in dicta, it's true, but delineating cases where the plaintiff knows about the fraud at the time of the buyout versus doesn't. But California cases after Steinberg have interpreted that to say that the California Supreme Court is leaving the question open. That's right. So it's an open question. In a literal sense, it is. It is inconceivable to me, and perhaps to you as well, that the California Supreme Court would decide a rule whereby successfully concealing your fraud at the time of the buyout means you get away with it scot-free. And that's the implication of defendant's rule. And is it your position that if Section 1312 applies, then that would be dispositive of the full case? If Section 1312 applies, yes. That would keep the state law claims out, but there would still be the federal claims, which are briefed. Federal claims? Federal securities fraud claims. But you didn't plead your federal securities fraud claims. We did plead them, and we adequately pleaded them in the second amended complaint. Well, no, you didn't plead them in your third amended complaint. That's right, because we had already pleaded them adequately in the second, and the district court imposed unnecessary conditions on. And so this goes to your argument that you should be entitled to have to re-plead or to have re-plead? This all assumes that the court is going to go with defendants and hold something that no court has ever held, that defendants successfully concealed their fraud, and therefore plaintiffs are without a remedy. If the court wants to hold that way, then yes. Plaintiffs are entitled to pursue federal security claims, which are not barred by Section 1312. OK. Thank you. Good morning, Your Honors, and may it please the court, Kathleen Hartnett for defendants. I might just start. I was going to clear away maybe some of the affirmative issues first and then talk about 1312 to the extent the panel would like that. On the federal securities issue, just to put that to rest, there was a amendment, third amendment to the complaint after discovery where they re-pled the state fraud but chose not to include the federal securities claim. There was nothing barring them from doing that. So not only did they fail to re-plead at the pleading stage, they also failed to re-plead after having an opportunity to develop evidence. So that's sort of doubly waived, and we believe there would be no chance of that ever coming back. On the appreciation damages point, I think the court seems to have been familiar with the record, so I don't need to belabor it, but I just wanted to sort of make clear there was not a judgment as a matter of law barring this theory of damages. In fact, what happened at the trial was that our clients made a motion in limine to actually bar the theory as a matter of law, citing 1312. The court denied motion in limine 3 and said, no, if they lay a foundation for appreciation damages, they can go to the – have the expert testify about that. What happened then was the plaintiffs put on their case. We, at trial, filed a motion to exclude Mr. Eichmann's appreciation damages for not having the evidentiary foundation, the points the court already has identified in terms of whether a buyout would have even stopped if he hadn't agreed to the buyout, whether an IPO would have happened. So that was put to the court. And then the court, in an order issued the same night as the party's briefing, said, I have some concerns about the foundation. Here are some questions that could be asked of the witnesses to make sure we develop that record. So the court –  The record on what? I'm sorry. This is about the foundation for the appreciation damages. And so I'm just trying to – there was not some sort of a two-step process or like a judgment of a matter of law on one hand and then something else otherwise. It was always understood, is there anything in this record that would support either the fact of or the amount of lost profits? And I – the court kind of went out of its way through that order on the evening of the – in the middle of trial to say, here are some questions that you would need to put before the – put some evidence in to allow this. The parties presented that, and then there was no evidence that came in to support the theory. And it was at that point, and that's why I just wanted to make sure the court is aware of it. And this is at the – basically the court had asked during the colloquy with plaintiff's counsel, there's no other evidence on this point, after giving them the chance to put it in. And this is at 1 ER 16 and 17. And the plaintiff's counsel said no. So this was not a situation where the court sought to take it away from the jury or made some legal ruling that would be disputable. This was simply an application of normal Daubert procedure, which was that you have to lay a foundation if there's going to be a factual assumption underlying your opinion. Otherwise, it's simply speculation and unreliable. And I think it would be an entirely different situation if the expert at hand had been some expert in Chinese markets and IPOs and had been able to concoct a but-for world in which plaintiffs would actually have been able to be part of some IPO. But that wasn't at all the nature of this expert. It was simply someone doing math, trying to show what the difference would be if the plaintiffs had been able to cash out in the IPO or not. I hope that clarifies that. But I do think the fact that the court was paying attention to this issue and saw it as a simple evidentiary issue should not be complicated now by legal arguments about a two-step analysis that were not part of the proceedings below. On the punitive damages point, moving to that, I think it's the court honed in on what I believe is the key issue in this case, which is whether or not the California statute requires more than what the jury instructions did here. And then, two, what is the meaning of the clear and convincing evidence standard? I believe that, you know, as the plaintiffs themselves have conceded in their brief at 41 and at 64 and 65, we're right. There is something more. The ---- So I looked up the Miller case while he was talking. Yes. And it says, insofar as the words oppression, fraud, or malice in the statute defining the standard for punitive damages are in the disjunctive, proof of the cause of action for fraud is itself an adequate basis for awarding damages. So that would seem to be that they're not different.  That is their best possible case, Your Honor. And what the court here did is actually reviewed Miller. And I think what else is important in Miller is further up than that or maybe below. The court actually instructed the jury. It rejected the jury instructions in that case for fraud and instructed the jury that the true intention of the fraud in that case, Miller, was to deny the payment of the benefits to lawfully due plaintiff. And so I think it does actually depend on ---- and that's what the court was doing here. The district court was carefully parsing the difference between the jury instruction, which required an intent to deceive for concealment but not an intent to harm. It required harm but not intent. And it was saying there's a delta between that and an intent to harm. And an example of that would be, and I think is kind of what actually is the situation in this case, there may have been what was an intentional failure to provide information in the sense that the party did not know, knew they were not providing it, but they weren't providing it to harm the other party. They weren't providing it to cause harm. They thought that was actually going to be a good thing for the other party. People were going to get the benefit of the buyout. And so I think that ---- and that's what actually taking a step back here for this judge who had presided over this lengthy proceeding and amendment of the complaint, a long trial, I think what the judge saw bear out is what actually happened with the jury verdict. There was a technical violation, a directed verdict that two quarters of 2017 financials should have been provided and weren't. And so that was a duty to disclose as a fiduciary and didn't happen. But not this affirmative case of massive misrepresentations, hiding buyers, all these other things. And so I think what the court did was say it matters here because the jury was essentially directed to find an intent to deceive, but that wouldn't necessarily entail an intent to harm and deprive the plaintiffs of property. What about Rattigan? Sorry? Rattigan, the Rattigan case. Yes, Your Honor. I think that and the other ---- let me just make sure I address that directly for you. It seems like it shows that intent to defraud is sufficient. Well, defraud is different than deceive. I know I sound like I'm ---- So help me understand that. Defraud means the whole cause of action. So if the jury instruction here had said there was an intent to harm as opposed to just harm, that would be a different case. So the whole cause of action together is a deprivation of a legal right. But all that had to be found and all that was found in this case for us to be held liable under concealment was that there was an intentional duty to disclose and an intentional failure not to provide that. That was the deception. And so I think what the judge here really took it seriously. He went back and said that's a delta between the plaintiffs did not have to actually prove that we intended to harm the plaintiffs to prevail. I've got to tell you, Eradican seems to suggest that fraud or concealment could suffice for punitive damages. I mean, your argument is that, oh, fraud. I think that case makes clear that fraud in the concealment and fraud affirmative are both equally wrong, but it doesn't really go to the specific question of what's the quantum needed to get to punitive damages under California law. So as a broad principle, we don't disagree that fraud, affirmative misrepresentations and concealment both are fraud. That's how they put the main point here, and that's why I feel like the district judge did such a careful job looking at the record here was that it put the parties on notice about this delta. It asked the parties to not submit jury briefing. It wanted to know what was the actual evidence supporting an intent to harm as opposed to intent to deceive. And I think other examples of where that delta would come into play is in this case it was more of an intentional failure to provide something but not an intent to harm. You could have a white lie, something that was never meant to hurt anyone but was actually a deceit. So there is a sensible line, a sensible space there. And beyond that, I would just say the clear and convincing standard does do work in all of these cases. It's very clear that the clear and convincing standard needs to do work. It's important. It's what the California legislature provided. And here looking at the full, and I know it's hard for you to do this now with this large, voluminous record, I think this judge who sat through this and saw it and saw what was promised and what was ultimately before the jury was concerned that no reasonable juror could come to a clear and convincing conclusion that there had been an intent to harm. I also would just point out on the First Alliance case, I do think the opposing counsel had said that we don't have any case showing that this delta matters. The First Alliance case, they just said, oh, the judge misunderstood that. That was an aiding and abetting case. Not at all. What the judge did with the First Alliance, which is this court's case, is it looked and said, oh, there's a person that's aided and abetted a fraud. That means they have to have been part of the fraud. And yet there they still look to see whether or not there was an intent to harm above the mere fact of aiding and abetting. So the point is just because you've been found liable of a fraud offense, you have to actually look at the offense that you've been found liable for and figure out if there is a delta. But I don't think we think the delta does all the work here. Talk to me about Steinberg. I think that you cite that in support of your case. But isn't that case distinguishable where the shareholders allegedly didn't know about the fraud until after the reorganization already happened? Thank you, Your Honor. And I think just to be clear, our main point here on this appeal is that the judge's evidentiary rulings were sound and that we should have an affirmance there. We did feel the need to bring up 1312 as our cross appeal because that is our position and we believe is correct under the law. It may seem draconian, but I do think that looking at the statute itself and how the courts have looked at Steinberg, sorry, how Steinberg itself reasoned, was that the place to channel all of this worry about unfairness is into an appraisal proceeding that happens at the time of the buyout. And I think the question really is what would the Supreme Court do? And we look to that for the California Supreme Court's decisions. We look at the Court of Appeal decisions. And then you have to be, if you're going to do something other than that, I think the standard even as cited in their brief is that you'd have to be certain, to a certainty, that they would do something different. I think the state of the law is sturgeon, as you may know, was in the 80s before Steinberg categorically, no, that was a fraud case. And the Court of Appeal, the lower court, said there's no fraud exception to 1312. Then in Steinberg, they were asked to revisit that. And in the facts of that case, there was, you know, all the facts were known. That was the assumption of the majority. The question then is, there's not a counter rule. There's been no case, no case has found an exception to 1312 based on concealed fraud. I'm having trouble with that. No, I know. And I understand it's uncomfortable because it does feel. And it may be, but I just want to be able to ask you these questions. So in your view, based on 1312, minority shareholders have no remedy other than appraisal under the statute? That's correct. And that's definitely the rule. And the question really is, okay, if they didn't, so what would be, is there any concealment rule? I think the – And I guess just to be clear about my concern over this, is you're saying that minority shareholders can't recover damages ever, even in cases of criminal fraud? Well, Your Honor, I – Even when that fraud was impossible to discover before the reorganization? Okay. And that's a very fair point. You can touch on both. I'm not going to stand here and just reiterate 1312, the bright line. I think it's – the question really would then be, okay, if they say the Supreme Court of California were to get a different case, they certainly have not adopted the rule that you have to know all the facts, and they put the burden on us in this case. So we think that the way the district court here drew that line for what the exception would be was problematic. It put the burden on us to show that they knew all material facts. We could imagine a case, and I think this is kind of taking from Steinberg itself, there they said they weren't concerned with the claim that the defendants were concealing the terms of the merger. So if there had been a – you got a fake merger document. They weren't the real ones. They didn't accurately describe the terms of the merger. That did not happen here. If, for some reason, you had deceived the plaintiff into not knowing that they had dissenter's rights, right, that they didn't have the appraisal available, you know, that didn't happen here. They knew. Or even we could see reading in a discovery rule, kind of akin to how you read into a statute of limitations, did you have reason to suspect, some basis to inquire? So I think at the end of the day, without – otherwise, you kind of got 1312, which, as the dissent said in Steinberg, does seem draconian and potentially out of step with our times, but it was passed in the 30s. It was reaffirmed in the 70s with adding an exception, but not adding this exception, and it's never been applied to allow a fraud claim, even a concealment claim, even though some courts have left open that possibility. I know you're clear about it, but let's say – just assume we might be unclear about it. Would we certify? So, I mean, clearly, like, finality in this case is part of the whole point of 1312 to start, so I think we are – and the other side hasn't asked for that. I do think a narrower way you could reach this without – if you don't want to impose this draconian rule and not be fully confident of it, would be was there enough reason to know or inquire further? Here, the person was clearly aware of their dissenter's rights. That's not in dispute, and I want to just make sure I direct you to a part – How would we do that without changing California law, which I'm not sure is our role? Look, I mean, I think we believe in our position in the brief that we actually – I know opposing counsel said he'd be shocked if they adopted the rule that we're proposing, but we actually think that's what the statute says, that's what Sturgeon held, and then Steinberg did not overrule that. Steinberg was asked to overrule Sturgeon in full, and it didn't. So I think we think that actually current California law bars the claim, and there's not a substantial certainty that the California Supreme Court would overrule it. Right, so, I mean, if we read the history the way that you're describing to us, I'm a little bit puzzled by the suggestion that we could just sort of wave our hand over this and say that, you know, there's a claim there, but you didn't prove it. To even say that suggests that California law is different than what you're proposing actually is. I know you have the harder job here than me in terms of just kind of – I mean, I do think it's plausible that you could just – we were akin to a discovery rule or something that was in a statute where you truly were deprived of any basis or awareness of your ability to exercise the rights. There could be some case like that, maybe, where the fraud was actually – and that's why we go back to Steinberg for that principle, that Steinberg at 689, where the person was – he says this was not a place where you were unaware of your right to an appraisal or you were deceived about that, and you're not – you know, that wasn't a claim where they were misrepresenting the terms of the merger. It's clear that the plaintiff knew what he was agreeing to, agreed to it, and knew they had rights and didn't exercise them, and we feel like at least in that case that would not be one where the California Supreme Court would allow a 1312 exception. And play this out for me. So at some point it's determined that 1312 applies here. Is that dispositive of this whole case? It is. So that would be our – I mean, our – you know, the evidentiary issues would sort of be at that point, beside the point that the action would be barred, the proper thing to do, and would be to have brought the appraisal at the time of the buyout. And also, just to be clear, both Steinberg, all the cases, make clear that you can actually channel these arguments about fraud and unfairness into those proceedings to help get a higher market value for the shares. So there's a place for those claims. They don't fall out of the world. They just go into the appraisal proceeding. And I think it really comes down to what's – you know, it does sound maybe unfair, but the cases clearly embrace that. Steinberg embraced that and still made the decision it did. But otherwise, you really allow someone to participate in a buyout, even if they could have inquired further, gotten more information here. The people didn't ask questions. They didn't really inquire further, and then come back later, years later, when a successful IPO happens and asked to have a windfall. And to be clear, that wouldn't – you know, I think that's exactly the type of situation where it's hard to picture a counter-rule that doesn't incentivize investors to always come up with a claim later on that they would have known more or they would have done the appraisal if they only knew it was going to turn into the next big thing. And so that's exactly why the rule makes sense, even if it does seem harsh. And at least in this case, it's not unfair because – and we do go through this in our brief, and I would just direct you to our fourth brief, the fourth brief at 20 to 21, that, you know, at the trial, Mr. Chan himself testified that he thought that the information statement was complete, incomplete. He didn't like that it didn't have an independent valuation, and he thought the deal was terrible. So if he thought all those things at the time of the buyout, what California law directed him to do was to go file an appraisal action rather than wait, accept the 250 percent return, and then later on, once this honestly highly contingent IPO eventually happened on a newly invented exchange in China with a new corporation, come back and say, I want to have – reap the rewards of that. Sorry if I haven't – It just seems Steinberg – in that case, if I'm correct, because there's a lot of cases here, the plaintiff was aware of all the facts leading to his cause of action. That's what the assumption was in Steinberg. It really – and that's why it's important to say Steinberg certainly didn't do the counter rule because the question then would be how many facts would be enough to put a person on notice to do the appraisal, and it certainly doesn't seem to us in the face of 1312's absolute bar and the legislature not having acted for so long that we would say it would be a big exception for concealed fraud, it would have to be some sort of an inquiry, if at all, into whether there was enough on the record for that plaintiff to have done more. And here the plaintiff could have and should have done more. If they were dissatisfied, they took the deal because they liked it at the time, this implausible but yet miraculous IPO eventually happens, and now they want the money. But it's clearly they didn't – they weren't aware of some of the facts here. I mean, it seemed like the jury made a determination on that. Well, and that's where there's a key point that's more of on our evidentiary piece. The jury, and this is in the jury instructions right after the concealment instruction, was directed that it was a failure, essentially a deception, an actionable deception to not have provided two quarters of financial statements. That was the only thing that was viewed to be as a matter of law required. A lot of this other information, and this is in many of the cases, this does not require – you still have to ask questions. Here are the people that were investing who were shell companies of chance, didn't even read the information. And so the point is that this does not create a – this is not a broader duty to disclose everything you know. It really is about providing the accurate terms of the merger and making sure the person knows that if they don't like the price, they can dissent. And this goes all the way back to that Beachwood case, that early case. Basically, you don't have a right to more than just being cashed out at fair market value at the time of a buyout, and that's just kind of what the law has been since the 30s, and it's, in our view, still that today. Thank you. Thank you very much, Ms. Harnett, for your oral argument presentation. I think you have some rebuttal time. Very short time. Regarding punitive damages, defendants say Dang wasn't providing this information, and that was for plaintiff's benefit. It was good for them to hide this information from them. Dang never meant to harm the plaintiffs. Those sound like a closing argument in a trial deciding whether the fraud here was intentional and whether it was done on a clear and convincing evidentiary standard. That's a jury issue. We need a trial on punitive damages. Turning to Section 1312 and the appraisal remedy, the reasoning of Steinberg helps us understand this as well. Steinberg says when the plaintiff knows about the wrongdoing at the time of the restructuring, appraisal is adequate because, quote, then appraisal facilitates vindication of the shareholder's claim of misconduct. In other words, appraisal is adequate when you can go ahead and litigate your fraud at the time of the appraisal. If you don't know core information, material information, the involvement of a major Chinese investment bank, the truth about financial performance, the truth about customer numbers growing, sales growing, if you don't know any of that, if it's been successfully concealed from you, as this jury found, you can't possibly vindicate your rights within an appraisal proceeding. So there is no way appraisal would be an adequate remedy for a shareholder in plaintiff's position. Thank you. Thank you, Mr. Love. I appreciate your oral argument presentation in this case. Lee v. Arksoft is now submitted, and we are adjourned. Thank you all very much. All rise.
judges: MURGUIA, FORREST, Collins